# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| BERKLEY V. WALKER, on behalf of himself and all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| BOKF, NATIONAL ASSOCIATION d/b/a BANK OF ALBUQUERQUE, N.A., | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Berkley V. Walker ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant BOKF, National Association d/b/a Bank of Albuquerque ("BOKF" or the "Bank"), and states:

**I. NATURE OF ACTION**

1.  This is a nationwide class action seeking damages and other relief from BOKF for its usurious assessment and collection of interest charged on overdrawn bank accounts in the form of "Extended Overdraft Fees." This practice violates the National Bank Act (the "Act").

2. When a BOKF customer writes a check or otherwise attempts to draw on insufficient funds in a checking or savings account, BOKF regularly pays this overdraft. As the Federal Reserve has recognized, "[w]hen overdrafts are paid, credit is extended."[1] If that account remains overdrawn for more than five (5) business days, BOKF collects a $6.50 Extended Overdraft Fee. Importantly, the Extended Overdraft Fee is levied *in addition to* the initial $34.50 overdraft fee that BOKF charges when it processes a charge against an overdrawn account. But unlike the initial overdraft fee, the Extended Overdraft Fee does not directly result from any overdraft and is charged even though BOKF has provided nothing new in the way of services to the consumer.

3. In reality, the Extended Overdraft Fee is an interest charge levied by BOKF for the continued extension of credit made in covering a customer's overdraft. This interest charge results solely from a customer's failure to repay his obligation to the bank (i.e., the extension of credit the bank provided by covering his overdraws) within a certain time period. But instead of charging the permissible interest rate imposed by the National Bank Act, in this case an annual interest rate of 6%, BOKF charges an effective annualized interest rate between 501% and 2,462%. By charging these usurious rates, BOKF collects interest worth more than 83 times what it may legally charge.

---

[1]   Joint Guidance on Overdraft Protection Programs, 70 Fed. Reg. 9127, 9129 (Feb. 24, 2005).

## II.   JURISDICTION AND VENUE

4. This Court has original jurisdiction of this action because it arises under the laws of the United States, namely the National Bank Act, 12 U.S.C. § 1, *et seq.*, and regulations promulgated by the Office of Comptroller of the Currency.

5. BOKF regularly and systematically provides retail banking services throughout the State of New Mexico, including in this District, and provides retail banking services to Mr. Walker and members of the Class. Thus, BOKF is subject to the jurisdiction of this Court.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because BOKF is subject to personal jurisdiction in this Court and regularly conducts business within this District. In addition, a substantial part of the events giving rise to the claims asserted herein occurred and continue to occur in this District.

## III.   PARTIES

7. Plaintiff Berkley V. Walker is an individual currently residing in Albuquerque, New Mexico. Mr. Walker has maintained a checking account with Bank of Albuquerque at all relevant times alleged herein.

8. Defendant BOKF is a national bank and wholly owned subsidiary of BOK Financial Corporation. BOKF is subject to the National Bank Act and regulations promulgated by the Office of the Comptroller of the Currency. BOKF is headquartered and has its principal place of business in Tulsa, Oklahoma. BOKF provides retail banking services to consumers, including Plaintiff and the Class, at more than 100 locations in Arizona, Arkansas, Colorado, Kansas, Maryland, Missouri, New Mexico, Oklahoma, and Texas.

## IV. FACTUAL BACKGROUND

### A. BOKF's Customer Agreement

9. Plaintiff and all members of the Class maintain checking and/or savings accounts with BOKF, the terms of which are governed by BOKF's standardized account agreement entitled "Depository Agreement for Transaction Accounts" ("Deposit Agreement"). A representative copy of BOKF's Deposit Agreement is attached as Exhibit A.

10. The Deposit Agreement states in relevant part:

> If multiple items have been presented against the Account and your Available Balance is insufficient to pay all the items presented, we will charge a fee (Overdraft Fee or Returned Item Fee) with respect to each item paid or returned. If your balance continues to remain overdrawn more than five business days, you will be subject to an Extended Overdraft Fee in the amount set in the Summary of Fees.

*Id.* at p. 7, ¶ 23.

11. The Summary of Fees and Definitions ("Summary of Fees"), attached as Exhibit B, provides that an Extended Overdraft Fee carries a charge in the amount of $6.50 "per business day charged after 5 consecutive business days of your account being overdrawn."

12. Thus, per the terms of BOKF's Deposit Agreement with its customers, after the fifth business day that BOKF has advanced customer funds sufficient to cover payment on a transaction that causes the customer's account to become overdrawn (and after charging the customer a separate $34.50 fee for each transaction that causes the account in question to become overdrawn), BOKF imposes a charge of $6.50 per business day until the customer deposits funds

sufficient to bring the account to a positive balance (i.e. repays its obligation to the bank).

13.     BOKF's Overdraft Program Opt-in Form ("Opt-in Form"), attached as Exhibit C, provides "we may charge you a fee of up to $34.50 each time we pay an overdraft" and "[a]lso, we **_may_** assess an Extended Overdraft Fee of $6.50 per business day once your account is in a negative balance for five consecutive business days."

### B.     Assessment of Extended Overdraft Fees

14.     Typically, when a BOKF checking or savings account holder deposits money into his account, the account's balance is positive, and the bank is permitted to use that money to its own ends. In exchange for the opportunity to use its customers' money, the bank pays the account holder interest on that sum. The customer has in effect loaned the bank money, and is collecting interest for its use. In this example, the bank would be considered the debtor, and the account holder the creditor.

15.     This relationship reverses when an account holder's balance becomes negative. When a customer draws on an account with insufficient funds, and BOKF advances the account holder money to cover the overdraft, the bank is providing the account holder funds that it expects to be paid back. In negative balance cases, then, the bank is the creditor and the account holder the debtor.

16.     In exchange for this credit, BOKF assesses Extended Overdraft Fees. Beginning on the sixth day after the triggering overdraft event occurs, BOKF charges its customers $6.50 every business day until the account is no longer overdrawn. Importantly, the Extended Overdraft Fees are unrelated to any

particular event causing an account to become overdrawn (which were already assessed a $34.50 initial overdraft fee) and, instead, are solely related to the fact that the Bank has extended credit to a customer to cover charges and it seeks compensation for the time value of that money.

17. Historically, overdraft fees have been, and continue to be, a substantial source of revenue for banks. Technological advances have allowed bank customers to access money in their accounts in new ways and have consequently increased the occurrence of overdraft episodes. As a result, the imposition of overdraft fees have skyrocketed.

18. For example, recent reports from the U.S. Consumer Financial Protection Bureau ("CFPB") show that a broad investigation has been launched regarding bank overdraft practices and procedures due to its concern that the growing cost of overdraft practices could place bank customers at unnecessary risk. Indeed, CFPB Director Richard Cordray acknowledged "[o]verdrafts can provide consumers with needed access to funds, but the growing costs of overdraft practices have the capacity to inflict serious economic harm.[2]" In 2012 alone, banks took in approximately $32 billion in overdraft-related fees[3].

19. Widespread overdraft practices are particularly problematic for low-income families and individuals with lesser financial means. As illustrated by a survey conducted by The Pew Charitable Trusts, overdraft-related fees target a

---

[2] Richard Cordray, Director, CFPB, Remarks at the CFPB Roundtable on Overdraft Practices (Feb. 22, 2012), *available at* http://www.consumerfinance.gov/speeches/prepared-remarks-by-richard-cordray-at-the-cfpb-roundtable-on-overdraft-practices.

[3] *See* CFPB, Consumer Financial Protection Bureau Study of Overdraft Programs (June 2013) at p. 17, *available at* http://files.consumerfinance.gov/f/201306_cfpb_whitepaper_overdraft-practices.pdf.

financially vulnerable population of consumers. Particularly, the study revealed that nearly 7 in 10 consumers who overdraft the most make less than $50,000 and 25 percent pay a week's worth of wages in overdraft fees annually[4]. Extended overdraft fees have compounded this negative impact upon those least able to repay.

20.     As a recent CFPB report reflects, "sustained negative balance" fees are becoming popular with banks and account for approximately 9% of total overdraft-related fees collected by banks that impose such charges[5]. According to the CFPB report issued in July 2014, once a bank charges its customer a sustained overdraft fee on day five, the negative balance is likely cured by the customer within just a few days, rather than weeks. As such, the bank's extension of credit to its overdrawn customer is typically very short-term. Moreover, most negative balances created by an overdraft are not high figures. Nearly two-thirds of transactions that cause overdrafts were for $50.00 or less[6]. As these statistics highlight, a bank's exposure for carrying a customer's overdraft is ordinarily very small and limited. But rather than charging legally permissible interest until its customer cures the overdraft balance, BOKF instead charges a purported Extended Overdraft Fee that in reality is interest at an illegal rate.

---

[4]     The Pew Charitable Trusts, Heavy Overdrafters: A financial profile (April 2016) at pp. 4–5, Figures 3 & 4, *available at* http://www.pewtrusts.org/~/media/assets/2016/04/heavyoverdrafters.pdf?la=en.

[5]     *See* CFPB, CFPB Data Point: Checking Account Overdraft (July 2014), Table 2 at p. 10, *available at* http://files.consumerfinance.gov/f/201407_cfpb_report_data-point_overdrafts.pdf.

[6]     *Id.* at p. 5.

### C. Damages to Plaintiff

21. On or about January 19, 2017, Plaintiff overdrew funds from his Bank of Albuquerque access checking account and BOKF assessed an initial overdraft fee of $34.50.

22. On or about January 26, 2017, the sixth business day following the overdraft event, BOKF assessed an extended overdraft fee of $6.50, and continued to assess such fee for every business day thereafter until March 17, 2018.

23. This assessment resulted in *thirty-six* separate extended overdraft fee charges, worth $234.00. During this time period, Plaintiff's negative account balance fluctuated from $59.81 to $293.81.

## V. CLASS ALLEGATIONS

24. Plaintiff brings this action on behalf of himself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class against Defendant (the "Nationwide Class"):

> All BOKF customers in the United States, who, within the applicable statute of limitations preceding the filing of this action incurred one or more extended overdraft fees.

25. Excluded from the Class are Defendant, as well as its officers, employees, agents or affiliates, and any judge who presides over this action, as well as all its past and present employees, officers and directors of Defendant and its subsidiaries and affiliates.

26. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection

with his motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

27. This action is brought and may properly be maintained as a Class action pursuant to Federal Rule of Civil Procedure 23. This action satisfies the numerosity, typicality, adequacy, predominance, and superiority requirements of those provisions.

28. ***Numerosity***: The Class members are so numerous that joinder of all members is impracticable. Plaintiff is informed and believes that the proposed Class contains thousands of individuals who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

29. ***Existence and Predominance of Common Questions of Law and Fact***: This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

    a. Whether BOKF charged interest to its customers under the guise of the Extended Overdraft Fee in amounts that violate the National Bank Act's usury limit;

    b. Whether BOKF developed and engaged in an unlawful practice that mischaracterized or concealed the true usurious nature of the Extended Overdraft Fee;

    c. Whether BOKF charged its customer an Extended Overdraft Fee that bears no relationship to the actual costs and risks of covering insufficient funds transactions; and

    d. Whether Plaintiff and other members of the Class have sustained damages as a result of BOKF's assessment and collection of the Extended Overdraft Fee, and the proper measure of damages.

30. ***Typicality***: Plaintiff's claims are typical of the claims of the members of the Class because they arise out of the same wrongful business practice of BOKF as described above.

31. ***Adequacy***: Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff is an adequate representative in that he has a BOKF account and suffered damages as a result of BOKF's assessment and collection of Extended Overdraft Fees. Additionally, Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no antagonistic or adverse interest to those of the Class.

32. ***Superiority***: The nature of this action and the nature of laws available to Plaintiff and the Class make the use of the class action format a particularly efficient and appropriate procedure to afford relief to him and the Class for the wrongs alleged. The damages or other financial detriment suffered by individual Class members is relatively modest compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Absent the class action, Class members and the general public would not likely recover, or would not likely have the chance to recover, damages or restitution, and Defendant will be permitted to retain the proceeds of its fraudulent and deceptive misdeeds.

33. Defendant keeps extensive computerized records of its customers and has one or more databases through which a significant majority of Class members may be identified and ascertained, and it maintains contact information, including email and home addresses, through which notice of this action could be disseminated in accordance with due process requirements.

## FIRST CAUSE OF ACTION

### Violation of the National Bank Act
### 12 U.S.C. §§ 85, 86

34. Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

35. The National Bank Act forbids national banks from assessing usurious interest. *See* 12 U.S.C. §§ 85, 86.

36. "Interest" is defined as "any payment compensating a creditor or prospective creditor for ***an extension of credit*** . . . ." 12 C.F.R. § 7.4001(a) (emphasis added). Examples of "interest" include, among other things, "fees connected with credit extension or availability," such as "late fees, creditor-imposed not sufficient funds (NSF) fees charged when a borrower tenders payment on a debt with a check drawn on insufficient funds, [and] overlimit fees. . ." *Id.*

37. BOKF's Extended Overdraft Fee is most appropriately characterized as "interest" because BOKF assesses this "fee" in connection with advancing funds to cover the customer's overdraft transaction—the "fee" effectively serves to compensate BOKF when the customer fails to repay the advanced sum within five business days of the initial overdraft event. Indeed, one court has already recognized that extended overdraft fees of this nature constitute "interest" under

section 85 of the National Bank Act. *See Farrell v. Bank of America, N.A.,* 224 F. Supp. 3d 1016, 1022 (S.D. Cal. 2016). Accordingly, BOKF's Extended Overdraft Fee must fall within the range of a permissible interest rate as set forth under the Act.

38. Section 85 of the National Bank Act sets forth the only two permissible rates of interest that national banks may charge: the greater, and no more, of the "interest at the rate allowed by the laws of the State, Territory, or District where the bank is located, or at a rate of 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located[.]" 12 U.S.C. § 85.

39. A bank is considered "located" in the state "specified in its organization certificate[.]" 12 U.S.C. § 81. Upon information and belief, BOKF is located in Oklahoma. The State of Oklahoma allows for a maximum legal interest rate of "six percent (6.0%) in the absence of any contract as to the rate of interest . . . ." 15 Okl. St. § 266.

40. Upon information and belief, BOKF sits in the Federal Reserve District of Kansas City, Missouri. The Federal Reserve Bank of Kansas City sets forth a discount rate for primary credit of 2.0% and a discount rate for secondary credit of 2.50%. As applied to Section 85 of the Act, the maximum permissible interest rate under this provision is 3.50%.

41. Although BOKF is only permitted to charge Plaintiff and other similarly situated consumers a maximum of 6.0% interest rate on any extension of credit or loan, BOKF's Extended Overdraft Fees constitute a usurious interest amount that far exceeds the maximum permissible amount set forth under Section

85. Specifically, using the maximum amount of Plaintiff's overdraft during the relevant time period ($293.81) and applying a 6% annualized interest rate over a 58-day period, the maximum amount that BOKF was legally permitted to charge Plaintiff was only $2.80. Instead, BOKF charged Plaintiff $234.00 for that 58-day period—*over 83 times* the maximum legal amount.

42. A charge of $234.00 for a 58-day period on Plaintiff's negative balance (which fluctuated from $59.81 to $293.81) translates to an effective annualized interest rate between 501% and 2,462%.

43. Plaintiff and the putative Class have been subjected to usurious and illegal interest rates under the facade of BOKF's Extended Overdraft Fees.

44. As a direct and proximate result of BOKF's unlawful practice in violation of Section 85, Plaintiff and putative Class members have suffered damages.

45. A national bank that knowingly charges usurious interest at a rate greater than that permitted by Section 85, shall forfeit "the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon." *Id.* at § 86. Where "the greater rate of interest has been paid, the person by whom it has been paid . . . may recover back . . . ***twice the amount*** of the interest thus paid from the association taking or receiving the same." *Id.* (emphasis added).

46. Accordingly, Plaintiff and the proposed Class hereby demand relief for the amounts owed to them arising from BOKF's violations set forth herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays on behalf of himself and all others similarly situated, for judgment against Defendant as follows:

a. Certifying the Class as requested herein, appointing Plaintiff as Class Representative, and appointing his counsel as Class Counsel;

b. Awarding Plaintiff and the Class damages (including twice the amount of the usurious interest paid), prejudgment interest from the date of loss, and his costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs; and

c. Providing such further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all of the claims so triable.

**BERKLEY V. WALKER**, on behalf of himself and all others similarly situated,

Dated: August 22, 2018

By: /s/ Benjamin H. Richman
One of Plaintiff's Attorneys

Benjamin H. Richman
brichman@edelson.com
Michael W. Ovca
movca@edelson.com
Edelson PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370

Fax: 312.589.6378

Rafey S. Balabanian*
rbalabanian@edelson.com
Edelson PC
100 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

*Admission *pro hac vice* to be sought.