IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BERKLEY V. WALKER, on
behalf of himself and all others
similarly situated,

    Plaintiffs,

v.    No. 1:18-cv-00810-JCH-JHR

BOKF, NATIONAL
ASSOCIATION d/b/a BANK OF
ALBUQUERQUE, N.A.,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

This case presents the question of whether the National Bank Act ("NBA"), 12 U.S.C. §§ 85-86, a federal law that regulates interest rates banks are able to charge, applies to extended overdraft fees banks charge to overdrawn accounts. On September 20, 2018, BOKF, National Association d/b/a Bank of Albuquerque, N.A. ("Defendant" or "BOKF") filed a Motion to Dismiss (ECF No. 5) the claim against it. The Court, having reviewed the motion, briefs, relevant law, and otherwise being fully advised, finds that the motion should be granted.

**I.    FACTUAL BACKGROUND**

Plaintiff Berkley V. Walker ("Plaintiff") resides in Albuquerque and maintains a checking account at Defendant's Albuquerque branch. Compl. ¶ 7, at 3, ECF No. 1. The account is governed by BOKF's standardized account agreement, which states:

> If Multiple items have been presented against the Account and your Available Balance is insufficient to pay all the items presented, we will charge a fee (Overdraft Fee or Returned Item Fee) with respect to each item paid or returned.

> If your balance continues to remain overdrawn more than five business days, you will be subject to an Extended Overdraft Fee[1] in the amount set in the Summary of Fees.

*Id.* ¶ 10, at 4.[2] According to the Summary of Fees, if BOKF pays for an item that a depositor authorizes of an amount greater than the account balance, BOKF charges a $34.50 fee for the initial overdraft. *Id.* ¶ 12, at 4. If the account status remains overdrawn five business days after the initial overdraft fee, BOKF may charge an additional Extended Overdraft Fee of $6.50 per business day. *Id.* ¶ 13, at 5.

On January 19, 2017, Plaintiff overdrew funds from his Bank of Albuquerque checking account. *Id.* ¶ 21, at 8. In accordance with the deposit account agreement and summary of fees, Defendant assesed an initial overdraft fee. *Id.* On January 26, the sixth business day after the intial overdraft, Defendant assesed an extended overdraft fee. *Id.* ¶ 22, at 8. Defendant continued to asses extended overdraft fees each business day until the account balance was no longer negative on March 17, 2017. *Id.* This created thirty-six seperate extended overdraft fee charges, worth $234 dollars, extending Plaintiff's negative account balance from $59.81 to $293.81. *Id.* ¶ 23, at 8.

BOKF is subject to the NBA and regulations promulgated by the Office of the Comptroller of the Currency ("OCC"), the primary regulator of national banks. *Id.* ¶ 8, at 3. The

---

[1] Extended overdraft fees are also called "excess overdraft fees," "sustained overdraft fees," or "continuous overdraft fees" by other courts. Because BOKF's standardized account agreement labels them "extended overdraft fees," this term will continue to be used.

[2] Although Plaintiff references both the standardized account agreement and summary of fees as exhibits, Plaintiff did not attach these documents to the complaint. Defendant in its answer attaches the documents as Exhibits 3 and 4. The Court may still consider these documents in ruling on Defendant's 12(b)(6) motion. "[I]t is accepted practice, if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *MacArthur v. San Juan Cnty.*, 309 F.3d 1216, 1221 (10th Cir. 2002).

NBA prevents national banks from assessing usurious interest rates on any extension of credit. *See* 12 U.S.C. §§ 85-86.

## II. PROCEDURAL BACKGROUND

On August 22, 2018, Plaintiff filed a putative class action on behalf of himself and others similarly situated. Plaitiff asserted only one claim, alleging that the extended overdraft fees in BOKF's standardized deposit account agreement are interest and that the interest rate violates the NBA. Plaintiff contends that Defendant is effectively charging an annulaized interest rate of between 501% and 2,464%, or 83 times what Defendant may legally charge under the NBA. Compl. ¶¶ 43,44 at 13.

On September 20, 2018, Defendant filed the Motion to Dismiss, arguing extended overdraft fees are not interest under the NBA. In support, Defendant asserts that there is a long history of case law where courts held that both initial and extended overdraft fees are not interest under the NBA, although there is no Tenth Circuit Court of Appeals decision that directly resolves this issue. *See* Def.'s Br. Supp. Mot. Dismiss, ECF No. 6, at 2. Defendant further asserts OCC's interpretation of overdraft fees places extended overdraft fees as an element of deposit account services rather than interest. *See* OCC Interpretive Letter No. 1082, 2007 WL 5393636 (May 17, 2007) ("the Letter").

In response, Plaintiff urges the Court to adopt the reasoning outlined in *Farrell v. Bank of Am. N.A.*, 224 F.Supp.3d 1016 (S.D. Cal. Dec. 19, 2016), which is the only court to find that extended overdraft fees are interest rates under the NBA. First, Plaintiff argues that initial overdraft fees and extended overdraft fees are entirely separate and triggered at different times and for different reasons. Pl.'s Resp., ECF No. 15, at 8. Although initial overdraft fees are deposit account services, extended overdraft fees cannot be considered connected to the same

3

banking services banks provide to their depositors. *Id.* In reality, Plaintff says, extended overdraft fees are for failure to pay back the initial overdraft fee placed upon the account. *Id.* Second, Plaintiff argues that when a bank covers an overdrawn account, they are "loaning" money to the account depositor. *Id.* at 14 (citing Joint Guidance on Overdraft Protection Programs, 70 FR 97127-01, 2005 WL 420970 (Feb. 24, 2005)). As such, the extended overdraft fee is really the interest on this "loan" by the bank. *Id.* Therefore, Plaintiff contends that extended overdraft fees should be subjected to the usurious interest rate regulations of the NBA. *Id.* at 19.

## III. LEGAL STANDARD

Defendant moves to dismiss the only only cause of action uder Fed. R. Civ. P. 12(b)(6). To establish a claim for relief, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Though a complaint need not provide "detailed factual allegations," it must give enough factual detail to provide "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A recitation of the elements of a cause of action supported by mere conclusory statements do not count as a well pleaded facts when determining plausibility. *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (quotations and citations omitted). If a plaintiff's well pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has failed to state a claim. *Id.* (quotations and citations omited). A reviewing court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to [the non-movant]." *Sanchez v. United States Dep't of Energy*, 870 F.3d 1185, 1199 (10th Cir. 2017). A putative class action complaint should be dismissed if the named

plaintiff's individual claims fail to state a claim for relief. *See Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208, 1213 (10th Cir. 2006) (holding class-action allegations were properly dismissed where the plaintiff failed to state a claim on its own behalf).

## IV. DISCUSSION

To better contextualize the facts and law of this case, the Court begins by reviewing the relevant statutory and regulatory framework. The NBA does not define the term interest. Previously, the Supreme Court held that the term "interest" is ambiguous and that OCC is due deference in interpreting what that term means. *See Smiley v. Citibank (S.D.), N.A.*, 517 U.S. 735,739, 116 S.Ct.1730, 135 L.Ed.2d 25 (1996). OCC has defined "interest" as used in 12 U.S.C. § 85 as "any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended." 12 C.F.R. § 7.4001(a). According to OCC regulation, when a charge is considered "interest," its rate cannot exceed "the maximum rate permitted to any state chartered or licensed lending institution by the law of the state where the bank is located." 12 C.F.R. § 7.4001(b). However, if the bank's charge is not "interest," then a separate set of regulations for "deposit account service charges" apply. 12 C.F.R. § 7.4002. Under these regulations, a bank can impose at its own discretion any account service charge and set the amount so long as it fall within "sound banking judgement." 12 C.F.R. § 7.4002(b)(2).

The OCC previously clarified the relationship between extended overdraft fees and the NBA in its Interpretive Letter 1082 or the Letter referenced earlier. *See Fawcett v. Citizens Bank, N.A.*, 919 F.3d 133, 137, (1st Cir. 2019). In the Letter, a bank with an overdraft fee system including both initial and extended overdraft fees asked for clarification on whether the system violated any portion of the NBA. *See* the Letter, 2007 WL 5393636 at *1. Like Defendant, the bank charged extended overdraft fees after a set number of business days and continued until the

5

depositor fixed the negative balance on their account. *Id.* at *1 & n.3. OCC concluded that the practice of collecting overdraft fees, both initial and extended, was lawful under the NBA and other bank regulations. *Id.* at *1. OCC determined overdraft fees, including extended overdraft fees, are part of the service banks provide with deposit accounts. *Id.* at *2. OCC recognized that creating and recovering overdrafts and overdraft fees have long been part of discretionary account services that banks provide to their customers. *Id*. The fees are meant to compensate banks for "services directly connected with the maintenance of a deposit account." *Id.* at *4.

With this backdrop in mind, the Court recognizes that OCC's interpretation of its own regulations is "controlling unless plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (citations and internal quotaion marks omitted). Further, even if OCC's interpretation is not controlling, the OCC's rationale is due a "measure of deference proportional to the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 159 (2012) (citations and internal quotation marks ommited).

**A. Extended overdraft fees are not interest under the NBA**

Plaintiff does not dispute the initial overdraft fee, only the extended overdraft fees. Thus, the only issue before the Court is whether extended overdraft fees are considered interest under the NBA. If the extended overdraft fees are interest, the percentage value exceeds the limit in the NBA, and the Plaintiff has established a claim upon which relief can be granted. However, if the extended overdraft fees are not interest, but rather some other charge, Defendant's Motion to Dismiss must be granted due to the Plaintiff's failure to state a claim.

Plaintiff argues the Interpretative Letter 1082 is silent and gives no definite guidance on collecting extended overdraft fees. Pl.'s Reply Br., ECF No. 15, at 17 & n.7. However, the

overdraft fee system considered and determined to be valid under the NBA included both initial and extended overdraft fees. There is nothing in the relevant OCC regulations or the Letter to "indicate any inclination on OCC's part to treat extended overdraft fees differently than intial overdraft fees when determining if the fee is considered interest." *In re TD Bank, N.A. Debit Card Overdraft Fee Litigation*, 2018 WL 1101360 at *7 n.13 (D.S.C. Feb. 28, 2018). OCC's conclusion that the overdraft fee system in question was lawful, that it did not violate the NBA, and that overdraft fees are not considered interest therefore extends to both the initial and extended overdraft fees.

Part of Plaintiff's argument is that overdraft fees in general reverse the relationship between the bank and the account holder. Plaintiff does not challenge the initial $34.50 overdraft fee that Defendant assessed on his account. Rather, Plaintiff challenges only the extended overdraft fees, saying that they are functionally interest under the NBA. *See* Pl.'s Reply Br., ECF No. 15, at 4 n.2. Relying on *Farrell*, 224 F.Supp.3d at 1020-1022, Plaintiff argues that when a bank advances funds to an over-drafted depositor, the bank creates a "debt" on which the consumer pays interest. Plaintiff notes that the intial overdraft fee is charged when the account first becomes overdrawn, whereas the extended overdraft fee is charged when the deposit account remains negative after five business days. The extended overdraft charge is therefore related to the passage of time from failure to pay back the initial overdraft fee, rather than the overdraft itself. As such, Plaintiff argues that the extended overdraft fees are not related to deposit account services and therefore extended overdraft fees are better characterized as interest on the initial overdraft fees.

However, Plaintiff's arguments have been roundly rejected by all courts other than the *Farrell* court. The *Farrell* court did not consider or cite to Interpretive Letter 1082 in its

7

reasoning, which one court has said "squarely contradicts" Plaintiff's and *Farrell*'s view of the relationship between the account holder and the bank. *In re TD Bank*, 2018 WL 1101360 at *10. In the Letter, OCC plainly held that processing and recovering overdraft fees are not exercises in a bank's right to collect a debt. *See* the Letter, 2007 WL 5393636 at *4. "Fundamentally, the Bank is not creating a 'debt' that it then 'collects' by recovering the overdraft and the overdraft fee from the account." *Id.* Rather, OCC sees overdraft fees, including extended overdraft fees, as a service a bank provides to depositors in accordance with the bank's federal authority. *Id.*

*Farrell* aside, federal courts have routinely deferred to the OCC's view and held that overdraft fees are not interest under the NBA. *See e.g.*, *Fawcett*, 919 F.3d at 137 (stating that "as the law currently stands, Interpretive Letter 1082 resolves this case"); *Moore v. MB Fiancial Bank, N.A.*, 280 F.Supp.3d 1069, 1071-72 (N.D. Ill. Nov. 16, 2017) (agreeing with courts that have held extended overdraft fees are not interest in accordance with OCC regulations); *Shaw v. BOKF, N.A.*, 2015 WL 6142903 at *3 (N.D. Okla. Oct. 19, 2015) (stating that the Letter expressly referred to overdraft fees as non-interest charges); *In re TD Bank*, 2019 Wl 1101360 at *7 n.13 (stating that there is ample evidence that OCC intended for the collection of all overdraft fees to be considered activities directly connected with the maintenance of a deposit account); *Johnson v. BOKF, N.A.*, 341 F.Supp.3d 675, 681 (N.D. Tex. Sep. 18, 2018) (holding that interpretations of regulations by the "most pertinent regulator, the OCC" are persuasive authority).

Plaintiff's attempt to draw a distinction between intial and overdraft fees fails because, aside from *Farrell*, courts have consistently held that both initial and extended overdraft fees are contingent upon a customer overdrawing their account. *See McGee v. Bank of America, N.A.*, 2015 WL 4594582 2015 at *3 (S.D. Fla. July 30, 2015), *aff'd*, 647 Fed. Appx. 958 (11th Cir.,

Jan. 18, 2017); *McGee*, 2015 WL 4594582 at *3 (finding the holding of initial overdraft fees are not interest to apply to extended overdraft fees regardless of differences in application); *Johnson*, 341 F.Supp.3d at 681 (following a ruling stating an inability to adequately draw a distinction between extended overdraft fees and overdraft fees); *Shaw*, 2015 WL 6142903 at *4 ("The arguments advanced by plaintiff have been consistently rejected by federal district courts, and this Court does not find plaintiff's arguments any more persuasive because they are advanced in connection to extended overdraft fees, as opposed to initial overdraft fees."); *see also Moore v. MB Fin. Bank, N.A.*, 280 F.Supp.3d 1069 (N.D. Ill. 2017); *Fawcett*, 919 F.3d at 142; *In re TD Bank*, 2018 WL 1101360 at *9; *In re TD Bank N.A.*, 150 F.Supp.3d 593, 642 (D.S.C. 2015). The *Shaw* and *Johnson* rulings are noteworthy because at issue was BOKF and BOKF's extended overdraft fees included in the standardized deposit account agreement at issue here. *Farrell*'s holding – advocated by Plaintiff – that extended overdraft fees constitute interest under the NBA stands as an outlier to an otherwise "uniform line of precedent." *Johnson*, 341 F.Supp.3d at 681.

The court in *McGee* took this analysis one step further, stating that even if the two charges were treated differently, that still made no impact on the analysis of extended overdraft fees. The court cited the OCC regulation classifying interest and deposit account fees that states a charge does not need to be attached to a service to be considered non-interest. *See McGee*, 2015 WL 4594582 at *3 (quoting 12 C.F.R. § 7.4002(b)). That a charge is based upon something other than services does not necessarily remove it from the category of non-interest charges. *Id.* As such, like with initial overdraft fees, there is no reason to think of or treat extended overdraft fees as interest under the normal sense of the word or under the NBA. The *McGee* court rejected the

plaintiff's argument that extended overdraft fees were interest, whether or not they were analyzed differently from initial overdraft fees.

Courts have found further reasons to hold extended overdraft fees are better characterized as non-interest charges. The First Circuit in *Fawcett* recently listed a few it believed were the most persuasive. First, the extended overdraft fees are from the terms of a bank's deposit account agreement with its customers. *See Fawcett*, 919 F.3d at 138. Even without considering the Letter, courts have found this information relevant when classifying charges as deposit account charges and non-interest. *See Video Trax, Inc. v. NationalBanks, N.A.*, 33 F. Supp.2d 1041, 1050 (S.D. Fla. 1998), *aff'd*, 205 F.3d 1358 (11th Cir. 2000). Second, extended overdraft fees lack the hallmarks of credit extensions because the overdraft does not involve a customer reaching out to the bank to borrow money. *See Fawcett*, 919 F.3d at 139. Lastly, extended overdraft fees do not operate like "interest" because the amount is a flat flee applied to any overdrawn balance, not a percentage applied to a specific principal. *Id.* Extended overdraft fees bear none of the normal characteristics of interest or credit. Instead, extended overdraft fees are more similar in purpose and application to initial overdraft fees, a non-interest deposit account charge. Therefore, this Court declines to follow the reasoning in *Farrell*, and instead joins other courts in holding extended overdraft fees are not interest under the NBA.

Lastly, Plaintiff argues that the covering of an overdraft account is a "loan" by the bank to the account depositor. Plaintiff relies partly on the Joint Guidance on Overdraft Protection Programs, which states "when overdrafts are paid, credit is extended," for the contention that covering an overdrawn account is essentially loaning credit to the account holder. 70 FR 97127-01, 2005 WL 420970 (Feb. 24, 2005). However, previous courts that considered the Joint Guidance hold it to be inapplicable to the question at hand. The Joint Guidance is not an

interpretation of the OCC with regards to the NBA, nor does it purport to be. *See Fawcett*, 919 F.3d at 140. Rather, the Joint Guidance predates Interpretive Letter 1082, and thus is not OCC's last word on overdraft programs including both initial and extended overdraft fees. *Id.* Finally the statement "when overdrafts are paid, credit is extended," in context refers to a "credit risk" to the institution from charging off the negative balance from other sources if a bank decides to honor an overdrawn account. *Id.* (quoting 70 FR 97127-01, 2005 WL 420970). In this scenario, the bank does not become a creditor to the account holder if the account becomes overdrawn, which is a typical feature of a creditor-debtor relationship. Here, Plaintiff did not borrow money or obtain a line of credit from Defendant. Plaintiff is not charged for the use of money, but rather for overdrawing their account and then failing to timely remedy the overdraft. *See Shaw*, 2015 WL 6142903 at *4. Extended overdraft fees, like initial overdraft fees, cannot be interest because they do not arise from credit transactions. *See McGee*, 2015 WL 4594582 at *3. Therefore, this Court joins the numerous courts in holding a bank does not loan money in the event an account becomes overdrawn.

## V. CONCLUSION

Based on OCC regulation and the decisions of previous courts, Plaintiff did not borrow money or obtain a line of credit from Defendant. Instead, Plaintiff maintained a checking account, over-drafted the account, and then Defendant provided the service of covering Plaintiff's overdraft. Plaintiff was not charged interest for the use of the money, but rather for the failure to remedy the status of the account withing five business days, in accordance with the deposit account agreement between Plaintiff and Defendant.

**IT IS THEREFORE ORDERED** that *Defendant's Motion to Dismiss Plaintiff's Class Action Complaint* [**ECF No. 5**] is **GRANTED**.

_____
JUDITH C. HERRERA
UNTIED STATES DISTRICT COURT JUDGE