# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

BERKLEY V. WALKER, *on behalf of himself and all others similarly situated*,

      Plaintiff,

v.

No. 1:18-cv-00810-JCH-JHR

BOKF, NATIONAL ASSOCIATION *doing business as* BANK OF ALBUQUERQUE, N.A.,

      Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Berkley V. Walker's "Motion for Reconsideration and Memorandum of Law in Support." *See* ECF No. 21 (Pl.'s Mot.).

## I.    BACKGROUND

Plaintiff Berkley V. Walker (Mr. Walker) resides in Albuquerque and has maintained a checking account with Defendant BOKF, National Association d/b/a Bank of Albuquerque (BOKF). The account is governed by a Deposit Agreement, which reads as follows:

> If multiple items have been presented against the Account and your Available Balance is insufficient to pay all the items presented, we will charge a fee (Overdraft Fee or Returned Item Fee) with respect to each item paid or returned. If your balance continues to remain overdrawn more than five business days, you will be subject to an Extended Overdraft Fee in the amount set in the Summary of Fees.

Plaintiff's Class Action Complaint, ECF No. 1, ¶ 10 (Pl.'s Compl.) The "overdraft fee" referred to is $34.50, and it is a fee on the transaction that caused the account to be overdrawn. *Id*. ¶ 12. If a customer's account remains overdrawn for over five consecutive days, BOKF then charges a so-called "extended overdraft fee" of $6.50 every business day that the account remains overdrawn. *Id*. ¶¶ 11-12.

On January 19, 2017, Mr. Walker overdrew his checking account, so BOKF assessed an initial overdraft fee of $34.50. After five days of a negative account balance, BOKF started assessing the $6.50 extended overdraft fee for every business day until March 17, 2017, resulting in a total of $234 extended overdraft fees. During this period, Mr. Walker's negative account fluctuated between $59.81 and $293.81.

Under the National Banking Act (NBA), when BOKF charges interest, the rate cannot exceed "the rate allowed by the laws of the State ... where the bank is located," 12 U.S.C. § 85, which in this case is the State of Oklahoma, which allows for a maximum interest rate of 6%. This maximum interest rate is known as the usury limit, and anyone who is charged a rate exceeding that limit has a cause of action under the Act. *See* 12 U.S.C. § 86. The NBA does not define the term "interest," and the Supreme Court previously held that the term is ambiguous. *See Smiley v. Citibank (S.D.), N.A.*, 517 U.S. 735, 739 (1996).

BOKF's federal regulator, the Office of the Comptroller of the Currency (OCC) has defined interest to include "any payment compensating a creditor … for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended." 12 C.F.R. § 7.4001(a). When a charge is not "interest," then a bank has discretion to impose any account service charge and set the

amount – without regard to usury limits – so long as it falls within "sound banking judgement." 12 C.F.R. § 7.4002(b)(2). *See Fawcett v. Citizens Bank, N.A.*, 919 F.3d 133, 135 (1st Cir. 2019).

On August 22, 2018, Mr. Walker filed a class action complaint in this Court. According to Mr. Walker, BOKF "advanced" funds to Mr. Walker for failing to rectify his account within five days, thereby creating a "debt" on which the Mr. Walker paid "interest." Because BOKF can charge accountholders like Mr. Walker a maximum annual interest rate of 6% on any extension of credit or a loan, BOKF's extended overdraft fees effectively charged an annualized interest rate of between 501% and 2,464% on Mr. Walker's account, or 83-times what BOKF may legally charge under the NBA.

Mr. Walker contends that extended overdraft charges of this kind have become a multibillion-dollar source of profit for national banks, operating under the guise as "fees" when in reality they are usurious interest. Mr. Walker asserted that his lawsuit was properly maintainable as a class action under Federal Rule of Civil Procedure 23 and proffered a class definition as follows:

> All BOKF customers in the United States, who, within the applicable statute of limitations preceding the filing of this action incurred one or more extended overdraft fees.

Pl.'s Compl. ¶ 24.

On September 20, 2018, BOKF moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), which the Court granted in a Memorandum Opinion and Order (Order). *See* ECF No. 19. Within 28-days of entry of final judgment, Mr. Walker moved to reconsider, contending that the United States Supreme Court's case *Kisor v. Wilkie*, 139

S. Ct. 2400 (2019) – which was decided before this Court issued its Order, but after the parties fully briefed BOKF's Rule 12(b)(6) motion – represented an intervening change in *Auer*[1] deference – that is, the doctrine that federal courts should defer "to agencies' reasonable readings of genuinely ambiguous regulations." *Id.* at 2408.[2] According to Mr. Walker, the Court did not properly analyze whether the OCC's regulation defining interest, 12 C.F.R. § 7.4001(a), was genuinely ambiguous. Mr. Walker believes that a proper application of *Kisor* will show that § 7.4001(a) is *not* ambiguous, and he therefore contends that the regulation's plain language of interest covers extended overdraft fees.

## II.    LEGAL STANDARD

Mr. Walker brought his motion to reconsider under Federal Rule of Civil Procedure 59(e), which allows a party to move to alter or amend the judgment. Under Rule 59(e) "[a] motion to reconsider may be granted when the court has misapprehended the facts, a party's position, or the law." *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014) (citation omitted)). Specific grounds include: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.* "A motion for reconsideration is not appropriate to rehash arguments previously addressed, but a district court has broad discretion to reconsider its

---

[1] *Auer v. Robbins*, 519 U.S. 452 (1997).

[2] In *Kisor* the Court granted certiorari to decide whether to overrule *Auer*. *See* 139 S. Ct. at 2409. The Court did not overrule *Auer* but did "reinforce its limits," *id.* at 2408, none of which, as the Court will soon explain, apply to this case.

interlocutory rulings before the entry of judgment." *Id. United States v. McCluskey*, No. CR 10-2734 JCH, 2013 WL 12329343, at *2 (D.N.M. Oct. 7, 2013) (citation omitted)).

## III. DISCUSSION

As noted earlier, the NBA does not define the term "interest." The OCC, though, has defined interest to include "any payment compensating a creditor … for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended." 12 C.F.R. § 7.4001(a). "It includes, among other things, the following fees connected with credit extension or availability," 12 C.F.R. § 7.4001(a):

> numerical periodic rates, late fees, creditor-imposed not sufficient funds (NSF) fees charged when a borrower tenders payment on a debt with a check drawn on insufficient funds, overlimit fees, annual fees, cash advance fees, and membership fees.

*Id*.

In the Court's Order, the Court discussed how, in 2007, the OCC concluded that a national bank did not charge its California customers "interest" as used in the OCC's regulations when the bank charged a flat excess overdraft charge to customers whose accounts remained overdrawn after an initial overdraft fee was imposed. *See* ECF No. 19 at 5-6 (citing and discussing OCC Interpretive Letter No. 1082, 2007 WL 5393636 at *1 & n.3 (May 17, 2007) (2007 Letter)). The national bank's overdraft fee system was strikingly similar to BOKF's in that the bank "charge[d] a Continuous Overdraft Charge of $5 per business day from the fourth through eleventh calendar day that an account is overdrawn." 2007 WL 5393636 at *1. As the Court explained, the OCC concluded that the

bank's practice of collecting overdraft fees, both initial and extended, was lawful under the NBA and other bank regulations because creating and recovering overdrafts and overdraft fees have long been part of discretionary account services that banks provide to their customers and the fees are meant to compensate banks for services directly connected with the maintenance of a deposit account.

Again, courts must defer to the OCC's interpretation of the term interest, *see Smiley*, 517 U.S. at 739-43, and Mr. Walker did not argue in his response brief to BOKF's Rule 12(b)(6) motion that OCC's interpretation of its regulation was plainly inconsistent with the text of the regulation.[3] Accordingly, the Court determined that BOKF's practice of charging overdraft fees was indistinguishable from the bank discussed in the OCC's 2007 Letter, and therefore held that BOKF's practice was consistent with the NBA. In so holding, the Court cited *Auer* and concluded that there was no reason to withhold deference. The Court also favorably cited the First Circuit's 2019 case *Fawcett*, which similarly applied *Auer* deference to the same OCC letter at issue where the plaintiff, like

---

[3] In its Rule 12(b)(6) motion, BOKF boldly set out the OCC's 2007 Letter in a block quote. In his response brief, Mr. Walker barely addressed by misinterpreting *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.,* No. CV 6:15-MN-2613-BHH, 2018 WL 1101360 *7 n.13 (D.S.C. Feb. 28, 2018)), which Mr. Walker thought endorsed the view that the OCC was "silen[t]" on whether extended overdraft fees are interest. ECF No. 15, 17. But the district court held the exact opposite; the court in fact meticulously highlighted the dearth of legal authority – what Mr. Walker calls "silence" – including from the OCC, supporting the plaintiff's (and Mr. Walker's) argument that extended overdraft fees are distinct from overdraft fees generally such that they are interested. *See In re TD Bank,* 2018 WL 1101360 *7 & n.13. For purposes of analyzing Mr. Walker's motion to reconsider, the Court holds that Mr. Walker's arguments did not raise an objection concerning *Auer* deference.

Mr. Walker, failed to argue that the letter was a plainly erroneous interpretation of the regulation. *See* 919 F.3d at 137-38.

In his motion to reconsider, Mr. Walker contends that the Court did not analyze whether § 7.4001(a) is genuinely ambiguous under *Kisor*. He argues that the regulation's definition of interest – "any payment compensating a creditor … for an extension of credit," 12 C.F.R. § 7.4001(a) – is in fact not ambiguous. He reasons that BOKF created a "debt," by advancing overdraft funds, thereby making BOKF a "creditor," and Mr. Walker a "debtor" within the meaning of the regulation.

However, even though Mr. Walker characterizes *Kisor* as an intervening change in the law requiring reconsideration, the Court has already ruled on (and rejected) his central argument that the creditor-debtor relationship is reversed in the context of extended overdraft fees. And, most importantly, Mr. Walker overlooks that the Court did not rest its decision exclusively on the 2007 Letter. In fact, far from it. In its Order, the Court discussed at length how it was joining the majority of federal courts that have considered the issue of whether extended overdraft fees are interest within the meaning of 12 U.S.C. § 85 and 12 C.F.R. § 7.4001, and concluded that they are not. The Court explained in its Order how extended overdraft fees are incurred as part of an accountholder's maintenance of a deposit account, and do not arise from a credit transaction such that the fees are interest. In other words, the Court came to its conclusion by analyzing the character of extended overdraft fees and explained how they "lack the hallmarks of credit extensions." ECF No. 19 (citing *Fawcett*, 919 F.3d at 139).

A look at the federal cases relied on by the Court counters Mr. Walker's claim that the Court treated the 2007 Letter as "dispositive." Pl.'s Mot. at 7. Some of those courts did not rely on the 2007 Letter at all, *see Video Trax, Inc. v. NationsBank, N.A.*, 33 F. Supp. 2d 1041, 1050 (S.D. Fla. 1998), *aff'd*, 205 F.3d 1358 (11th Cir. 2000); *McGee v. Bank of America, N.A.*, 2015 WL 4594582 2015 at *3 (S.D. Fla. July 30, 2015), *aff'd*, 647 Fed. Appx. 958 (11th Cir., Jan. 18, 2017). Other courts relied on the letter for its persuasive value without giving it deference, *see e.g., In re TD Bank,* 2018 WL 1101360, at *7; *Johnson v. BOKF, Nat'l Ass'n*, 341 F. Supp. 3d 675, 681 (N.D. Tex. 2018); *Shaw v. BOKF, Nat. Ass'n*, No. 15-CV-0173-CVE-FHM, 2015 WL 6142903, at *3 (N.D. Okla. Oct. 19, 2015). The point of all this is to say that even assuming, *arguendo*, that the Court would have committed error by giving the OCC's 2007 Letter deference, Mr. Walker overlooks that the Court did not rest its decision exclusively on the OCC's 2007 Letter. While that letter was one legal ingredient in the Court's analysis, the Court also rested its decision on a bulwark of federal cases holding that extended overdraft fees are not interest, and therefore Mr. Walker is incorrect that the Court treated the letter as dispositive.

## IV.  CONCLUSION

*Kisor* does not permit Mr. Walker to renew his argument that overdraft fees reverse the relationship between the bank and the account holder, and therefore such fees are interest under 12 C.F.R. § 7.4001(a). The Court specifically considered and rejected this premise for reasons apart from the 2007 Letter.

**IT IS THEREFORE ORDERED that** Plaintiff Berkley V. Walker's "Motion for Reconsideration and Memorandum of Law in Support" **(ECF No. 21)** is **DENIED.** The

Court will again enter a separate final judgment contemporaneously with the entry of this

Memorandum Opinion and Order.

     **IT IS SO ORDERED**.


_____
JUDITH C. HERRERA
SENIOR UNITED STATES DISTRICT JUDGE